UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| IN RE BELLSOUTH CORPORATION ERISA LITIGATION | MASTER FILE: 1:02-CV-2440-JOF |
| THIS DOCUMENT RELATES TO: | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### REGARDING SETTLEMENT, ORDER AND FINAL JUDGMENT

The parties seek final approval of the proposed Settlement of this ERISA litigation pursuant to the Stipulation and Agreement of Settlement, as amended and submitted to the Court on June 16, 2006 (Docket No. 191) (the "Settlement Agreement"), which this Court preliminarily approved by order dated July 28, 2006 (Docket No. 194) (the "Preliminary Approval Order").   The issues having been duly heard on October 17, 2006, and a decision having been duly rendered,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

### I. FINDINGS OF FACT

***Procedural Background and Facts***

1.      This ERISA breach of fiduciary duty action commenced in 2002.  The Court has jurisdiction over the subject matter of this Action and over all parties to

this Action, including the Plans and all Participants with respect to the claims asserted under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).

2.      On April 21, 2003, Plaintiffs filed their Consolidated Complaint for Violations of Employee Retirement Income Security Act (Docket No. 9) (the "Complaint").  Defendants thereafter moved to dismiss the Complaint (Docket No. 19), which Plaintiffs vigorously opposed.  The Court denied Defendants' motion. *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361 (N.D. Ga. 2004) (Forrester, J.) (Docket No. 42).  Defendants answered the Complaint and the subsequent Amended Complaints (Docket Nos. 55, 139), and Plaintiffs replied to Defendants' counterclaims.  (Docket Nos. 59, 150).

3.      The parties also submitted briefing on class certification and numerous other issues, including discovery, and attended several hearings and conferences, primarily related to discovery and settlement issues.

4.      The parties engaged in formal discovery pursuant to a detailed discovery plan, which coordinated discovery in the ERISA and Securities Litigation.[1]  All discovery matters were referred to Judge Duffey.

5.      Defendants produced more than 512,000 pages of documents and also made available for review several hundred gigabytes of electronic documents and

related information through an online database.  Both parties engaged in extensive discovery, including expert discovery and written discovery to third-parties.

6.      During the relevant period, BellSouth's stock reached a peak of $50.63 on November 13, 2000, dropped to a low of $18.32 on September 30, 2002, and has since rebounded.  On Thursday, October 19, 2006, BellSouth's stock closed at $44.39 per share.

### Settlement Negotiations

7.      On October 7, 2005, at the parties' request, the Court referred the case to mediation before the Honorable Nicholas H. Politan, a retired United States District Judge and experienced mediator.

8.      The mediation was held in New York on November 1 and 2, 2005. All parties were represented by able, well-prepared counsel.  The negotiations were vigorous and protracted.  *See* Declaration of Nicholas H. Politan, ¶¶ 3-5.

9.      While an agreement was not reached during the mediation, the parties continued to negotiate.  Through a series of subsequent telephonic negotiation sessions, both with and without Judge Politan's involvement, the contours of a global settlement agreement were developed.  In the following months, the parties engaged in detailed negotiation regarding the specific terms of the Settlement

---

[1] All references to the Securities Litigation are to *In re BellSouth Corporation*

Agreement.  Several drafts of the document were circulated among counsel before complete agreement was reached, and the final signature was obtained on May 10, 2006.

10.     Judge Politan advised that counsel were motivated in seeking a resolution by the clients' best interests and that their negotiating positions were informed by the same.  *Id.*  The settlement process was in all respects thorough, adversarial, and professional.

11.     While the ultimate terms of the settlement represent a compromise of the parties' initial positions, they are a realistic assessment of the perceived relative strengths and weaknesses of the parties' positions, and the risks inherent in continued litigation.

12.     In sum, the Court finds that the Settlement was the result of extensive, arm's-length negotiations among the parties, insurers, highly experienced counsel, and an experienced mediator.

### Terms of the Settlement

13.     The terms and conditions of the Settlement are set forth in the Settlement Agreement, which has been submitted to and reviewed by the Court.

---

*Securities Litigation*, No. 02-2142 (N.D. Ga.).

14.     The Settlement Agreement inures to the benefit of the Plans, as well as all of the Plans' current participants, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

15.     The Settlement Agreement provides that the Defendants are to provide the following relief:

(a)     For a period of three years beginning April 1, 2006, BellSouth Corporation will continue to make matching contributions to the Plans.

(b)     For a period of three years beginning April 1, 2006, the Financial Performance Percentage used to calculate the match percentage in § 4(2)(a) of the Plans will not be less than 95%.

(c)     Plan participants shall have the right to direct matching contributions made to their Plan accounts among the same alternatives available for Plan participants' own contributions for a period of three years beginning April 1, 2006.

(d)     BellSouth Corporation will make matching contributions in cash rather than in employer stock for a period of three years beginning April 1, 2006.

(e)     Certain lifestyle funds, life cycle funds or similar type funds will be made available as investment options under the Plans for three years beginning April 1, 2006.

(f)     In 2006, the Plans will send materials to all participants that will include balanced information on the financial reasons for diversification of financial investments and the risks of over-concentration in a non-diversified company stock fund, such as the BellSouth Stock Fund.

(g)    If BellSouth is acquired by or merged with another company, the successor company will execute and perform BellSouth's obligations under this Agreement on terms not materially less favorable than those enumerated in subparagraphs (a) through (f) above. Nonetheless, such obligations and terms will apply with respect to any such successor's plans only with respect to individuals who are Participants in the Plans.

(h)    If a Participant does not elect to receive a matching contribution under the Plans, subparagraphs (a), (b), (c) and (d) of this paragraph shall not apply with respect to such Participants.

(i)    Defendants will pay Lead Plaintiffs' Counsel attorneys' fees and expenses in the amount of $3 million. Defendants will pay the RSP Plaintiffs' Counsel attorneys' fees and expenses in the amount of $675,000.

Settlement Agreement, ¶ 4.1.

16.    The Settlement provides unique and valuable relief in the form of increased retirement investment security through payment of matching contributions that are no longer made in Company stock, but in cash, and not required to be invested and maintained in Company stock, a guarantee that matching contributions will continue to be made, an improved array of investment alternatives, and investor education.

17.    The increase in the Financial Performance Percentage used to calculate the Company matching percentage under the Plans has the potential to

provide substantial monetary value to the Plans and the Plans' participants–up to

$90 million–as of the date of the Settlement Agreement.

18.     The scope of the release provisions in the Settlement Agreement can

be described generally as follows:

> (a)     The Settlement provides for release of (1) the individual
> claims of the named Plaintiffs; and (2) claims asserted on
> behalf of the Plans under ERISA § 502(a)(2).  Settlement
> Agreement ¶¶ 3.24 and 10.1-10.4.
>
> (b)     The Settlement does not release any claims for individual
> relief that may be brought by Plan participants under ERISA
> § 502(a)(3), 29 U.S.C. § 1132(a)(3).
>
> (c)     The Settlement does not release any claims brought
> against BellSouth and the other defendants in the ongoing
> Securities Litigation.  In addition, individual claims for relief
> pertaining to any purchases of BellSouth stock outside of the
> Plans are in no way affected by the Settlement.
>
> (d)     The Settlement does not release any individual claims for
> benefits under ERISA.

Stipulation & Agreement of Settlement, June 16, 2006.

19.     Upon consideration of the terms of the Settlement Agreement, the

Court finds that the Settlement is in all respects fair, adequate and reasonable,

constitutes an excellent result for the Plans and their participants, and should

therefore be approved.

***Compliance with Notice Requirements***

20.     Pursuant to the Preliminary Approval Order, on or about August 17, 2006, the Notice, in the form submitted by the parties and approved by the Court, was mailed to the last known address of all participants in the Plans and their beneficiaries.  According to the Garden City Group, Inc., which was retained by Defendants for purpose of mailing the Notice, in total, at least 71,851 notices were mailed.  *See* Affidavit of Jose C. Fraga Regarding the Mailings of the Notice of Pendency of Litigation, Proposed Settlement, and Hearing, Docket No. 250 (filed Oct. 13, 2006).

21.     The Notice properly advised the Plans' participants of all appropriate information regarding the Settlement, including their rights under the Agreement, and their right to object to the Settlement and to appear at the fairness hearing.

22.     The Court finds that the Plans' participants received proper and adequate notice of the Settlement Agreement and the Fairness Hearing, as required by Fed. R. Civ. P. 23(e)(1)(B) and 23.2, and consistent with the requirements of due process, and this Court's Preliminary Approval Order.

***Independent Fiduciary Approval***

23.     Pursuant to the terms of the Settlement Agreement, and as required by Department of Labor regulations, an Independent Fiduciary, U.S. Trust

Corporation ("U.S. Trust"), was retained to assess the fairness of the Settlement to the Plans.  U.S. Trust conducted a detailed review of the record and documents provided by counsel for the parties, including objections submitted, as well as extensive interviews with both Plaintiffs' and defense counsel and the mediator who worked closely with the parties to develop the Settlement terms.  At the conclusion of its review, U.S. Trust determined that the Settlement, including the compensation to be paid to Plaintiffs' Counsel as set forth in the terms of the Settlement Agreement are, from the Plans' perspective, fair and reasonable.

## II.  CONCLUSIONS OF LAW

### The Legal Standard.

1.      "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

2.      In applying this standard, the Court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

3.     Furthermore, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990).

4.     ERISA actions of this sort are no exception, and many courts have noted the particular complexity of these actions. *See, e.g., In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 228 F.R.D. 541, 565 (S.D. Tex. 2005) (the "complexity, expense and likely duration of the litigation . . . are self evident and exceptional . . . ."); *In re Ikon Office Solutions, Inc. Sec. Litig.,* 209 F.R.D. 94 (E.D. Pa. 2002) (the complexity and duration of litigation of similar breach of fiduciary duty claims, as well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement).

5.     In evaluating whether a proposed settlement is "fair, adequate and reasonable," the court should look to the following six factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and likely duration of [continued] litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett,* 737 F.2d at 986.

6.     In evaluating the fairness of a proposed settlement, the court should not try the case on the merits nor "make a proponent of a proposed settlement justify each term of a settlement against a hypothetical or speculative measure of what concessions might have been gained. . . ." *Cotton*, 559 F.2d at 1330 (internal quotation and citation omitted).

7.     In considering whether a proposed settlement meets the applicable standard, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Id.*  Thus, if experienced counsel determine that a settlement is in the parties' best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1152, 1216 (5th Cir. 1978).  Indeed, where experienced counsel have negotiated a settlement at arm's-length, with the help of an experienced mediator, a strong initial presumption is created that the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).

8.     Here, this presumption is borne out by the benefits obtained by the Settlement.  As a result of vigorous litigation and extensive arm's-length negotiations, the Plaintiffs have obtained a substantial recovery that is clearly in the best interests of the Plans and their participants.

***Factor One - the Likelihood of Success at Trial.***

9.      Although the Court denied Defendants' motion to dismiss, that ruling was based solely on the allegations in the Complaint.    Further, in that ruling, the Court expressed reservations about Plaintiffs' ability to ultimately prove their allegations.  *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1367-68 (N.D. Ga. 2004) (expressing "reservations about Plaintiffs' ability to muster sufficient facts in support of its claim that the Latin American investments rendered Company stock an imprudent investment.").

10.      While Plaintiffs continue to express confidence in their ability to ultimately prevail, they have acknowledged difficulties in proving their case.  *See* Plaintiffs' Memorandum, p. 14 ("As discovery progressed, it became increasingly apparent that the facts of the case would be difficult to prove.").

11.      Without reaching the merits, the Court finds that the following factors, the impact of which is disputed by the parties, mitigate in favor of settlement.

(a)      BellSouth did not restate its earnings, nor have the Defendants been the subject of an investigation or formal action by the Department of Labor, the Department of Justice, or the Securities and Exchange Commission, with respect to the fiduciary breached alleged.

- 12 -

(b)   Many of the claims alleged by plaintiffs in the Securities Litigation

were dismissed at the pleading stage.  *In re BellSouth Corp. Sec.*

*Litig.*, 355 F. Supp. 2d 1350 (N.D. Ga. 2005) (Duffey, J.) (dismissing,

for example, claims brought under the Securities Exchange Act of

1934, 15 U.S.C. § 78a, *et seq.*, arising from allegations that

Defendants failed to properly reserve for litigation contingencies,

failed to timely adopt Staff Accounting Bulletin ("SAB") 101 with

respect to publishing revenues, overstated unbilled publishing

receivables, overbilled Competitive Local Exchange Carriers

("CLECS"), and generally engaged in improper overbilling practices).

(c)   Defendants contend they delegated the decision about whether to

continue investments in BellSouth stock to an investment advisor,

State Street Global Advisors ("SSGA"), and that SSGA was aware of

all of the risks of BellSouth's Latin American operations (which were

disclosed by BellSouth), and nevertheless gave its approval for the

Plans' offering and investment in BellSouth stock.

(d)   As discussed below, damages would be difficult to prove.  The parties

strongly disagreed on a proper measure of damages.  Even if Plaintiffs

were to establish liability in this case, there is no assurance that a

judgment would provide an equal or greater recovery than the relief

obtained in the Settlement.

12.     Given these difficulties, the Court concludes that evaluation of this

first factor–the likelihood of success at trial–weighs in favor of approval of the

Settlement.

***Factor Two - Range of Possible Recovery.***

13.     In determining losses under ERISA, the relevant benchmark is what a

prudent investment would have returned in lieu of the imprudent one.  Drawing on

the Restatement (Second) of Trusts, courts have described the goal for measuring

losses as "restoring plan participants to the position in which they would have

occupied but for the breach of trust."  *Eaves v. Penn*, 587 F.2d 453, 462 (10th Cir.

1978).

14.     Courts are not of one mind in the manner in which they determine

losses for breach of fiduciary duty under ERISA § 409(a).  Some courts have

looked to the difference between actual investments and the "most profitable"

investment alternative.  *See Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir.

1985).  Other courts have measured losses by comparing the performance of the

imprudent investment with the amount the plan "would have earned during this

period as measured and adjusted by the movement of an appropriate index

- 14 -

reflecting the stock market." *Dasler v. E.F. Hutton & Co., Inc.*, 694 F. Supp. 624, 634 (D. Minn. 1988) (looking to the return of the S&P 500 stock index for the purpose of establishing losses under ERISA § 409). Although these two approaches vary widely, either approach could have led to a significant recovery if Plaintiffs were successful on the merits.

15.   The Plaintiffs' damages analysis is divided into a "holder" element and a "purchaser" element. The "holder" element consists of the damages resulting from a failure to dispose of the BellSouth stock when continuing to hold it was imprudent.

16.   The Defendants advanced two principal arguments in support of reducing or eliminating holder damages, the merits of which the Plaintiffs dispute and which the Court does not determine here.

(a)   Defendants claimed that the securities laws would have prevented them from divesting the Plans of the stock without first publicly disclosing the adverse information, and had such disclosure been made, the stock would have dropped, and the Plans would have suffered the same loss that occurred when the allegedly improper practices came to light. Thus, according to Defendants, Plaintiffs' damages were zero.

- 15 -

(b)     Since September 30, 2002, when it hit a low of $18.36, BellSouth

stock has more than doubled in value, recently rising to over $42.00

per share.  Defendants argued that this recovery in the price of

BellSouth stock would greatly reduce, and perhaps eliminate, the

holder damages.

17.     The Defendants advanced three principal arguments in support of

reducing or eliminating purchaser damages, the merits of which the Plaintiffs

dispute and which the Court does not determine here.

(a)     Defendants claim the rebound in the stock price eliminates any claim

for purchaser damages.

(b)     The parties disputed whether and when the continued investment in

BellSouth stock became imprudent.

(c)     Defendants claim they did take action to protect the Plans by selling

stock and, in fact, the Plans were significant net sellers of BellSouth

stock.  During the period of the alleged breach, stock was both bought

and sold by the BellSouth Stock Fund.  Over the relevant period, the

Fund acquired 20.9 million shares of BellSouth stock, but sold 88

million shares of BellSouth stock.  Thus, the Plans were net sellers of

stock during the relevant period, which, Defendants claim, precludes any finding of purchaser damages.

18.     Accordingly, without deciding the issue, the Court recognizes that potential damages in this case could have had a wide range.

**Factor Three - the Settlement Amount in Relation to Discount for Inherent Risks at Trial.**

19.     To assess the reasonableness of a proposed settlement seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (citing Manual for Complex Litigation § 30.44 (2d ed. 1985)).

20.     As the court explained in *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 624 (9th Cir. 1982), "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" (citation omitted).

21.     The Settlement provides to the Plans and their participants the potential for substantial value–up to $90 million from the change to the matching formula alone.

22.     As noted above, this case presents many risks, including the risk that liability would not be established under ERISA, and that even with a liability determination, recoverable losses might be zero, or, at least, less than the value of the Settlement.  Viewed in the context of the abundant risks presented in this case, the Settlement is reasonable.  Thus, the Court concludes that the value of the Settlement represents a reasonable discount given the risks of continued litigation.

**Factor Four - the Complexity, Expense, and Likely Duration of Continued Litigation.**

23.     The demands on counsel and the Court in resolving a case of this magnitude are significant and would require the devotion of significant resources. The parties' have already expended substantial resources in litigating this case.  If this settlement were not approved, substantial additional work would be required, including the completion of fact and expert discovery, briefing on summary judgment, designation of witnesses and exhibits, preparation of pre-trial memoranda and proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial, and, depending on the trial Court's ruling on the merits, briefing of the losing party's almost-certain appeal.

24.     ERISA litigation of this type is a rapidly evolving, complex, and demanding area of the law.  *See, e.g., Ikon*, 209 F.R.D. 94 (finding that the complexity and duration of litigation of similar breach of fiduciary duty claims, as

- 18 -

well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement); *Enron*, 228 F.R.D. at 565; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (noting that numerous factual and legal issues would substantially increase the ERISA cases' "complexity, duration, and expense" and thus "militate[d] in favor of settlement approval.").

25.    In the four years since Plaintiffs filed this action, numerous decisions have been rendered which have helped to define this area of law; however the rapid influx of new precedents presents an ever changing legal landscape, and there is a constant risk that the law will change before judgment.

26.    Given the intensity of the defense to date, it is highly likely that Defendants would have continued their defense through trial and a probable appeal.  The Settlement obviates that delay and will, if approved, advance the recovery to the Plans, possibly by as much as several years.  Thus, the Court finds that the complexity, expense, and likely duration of this litigation weighs in favor of approval of the Settlement.

**Factor Five - Objections to the Settlement.**

27.    The Court concludes that the objections do not preclude Settlement approval.  Indeed, "a settlement can be fair notwithstanding a large number of class

members who oppose it." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla.

1982) (citing *Cotton*, 559 F.2d at 1331), *aff'd*, 737 F.2d 982 (11th Cir. 1984)

(approving settlement despite receipt of 654 objections in case affecting several

thousand property owners living in thirty-one subdivisions where government had

declined to bring a parallel case and the plaintiffs faced significant damages

issues). In this case, only a small percentage of the participants have objected.

### The Settlement Provides Benefits to Retirees and Does Not Release Any Individual Claims They May Have

28.    Thirty-two of the individuals who objected raise a similar issue:  the

contention that the Settlement Agreement does not provide sufficient relief for

retirees and former employees of BellSouth.

29.    In fact, all participants of the Plans, whether current BellSouth

employees or retirees, stand to benefit from the revised investment alternatives,

such as lifecycle funds, as well as investor education, provided under the

Settlement.

30.    In exchange for the relief provided under the Settlement Agreement,

the Plans' claims for monetary relief under ERISA § 502(a)(2), 29 U.S.C. §

1132(a)(2), are released.  However, these are claims that inure only to the benefit

of the Plans, not to individual participants, and § 502(a)(2) does not allow for

claims by participants for individual relief–only for relief on behalf of a plan.  The

Settlement does not release any claims for individual relief that may be brought by the Plans' current or former participants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

31.    Nor does the Settlement release any claims by the Plans or by individual participants for relief in the Securities Litigation.

32.    The Court concludes, therefore, that the objections to the settlement that contend the Settlement Agreement fails to provide sufficient relief for retirees and former employees of BellSouth are without merit.

### *Plaintiffs' Attorneys' Fees and Costs are Reasonable*

33.    Of the 71,851 Notices mailed, only five recipients have raised the issue of the reasonableness of the attorneys' fees and costs to be paid pursuant to the terms of the Settlement Agreement.  Under the terms of the Settlement, Co-Lead and Liaison Counsel are to receive $3 million in full satisfaction of the fees and costs they have incurred in this litigation on behalf of Plaintiffs and the Plans.  The Joganic/RSP counsel are to receive $675,000 in fees and expenses in recognition of their efforts taken on behalf of the RSP.

34.    The record reflects that, to date, at least 13,540 hours of attorney and staff time have been incurred in this case.  The hourly rates billed are customary for attorneys of this practice area and experience.

35.     The record reflects that, to date, Plaintiffs' counsel has incurred at least $4,872,588 in fees[2] and $271,513 in costs.  These fees and costs are reasonable given the amount of work done in this case.  These amounts are well above the amount to be paid to Plaintiffs' counsel.

36.     The fact that the attorney's fees and costs were negotiated at arm's-length underscores the fact that the fees are reasonable and should be approved. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (an agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").

37.     Even more importantly, Plaintiffs' counsel have negotiated a settlement that will create important relief for the Plans and their participants going forward, adequately addressing some of "the problems that necessitated the filing of this lawsuit originally." *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (approving a "creative and useful" settlement that achieved a "fair and reasonable resolution").  Both parties were represented by prominent and competent counsel, and both sets of counsel were diligent in representing their respective clients, as evidenced by the level of activity in this matter.  Plaintiffs' counsel should receive adequate remuneration for their efforts.

---

[2] Plaintiffs' attorney fee calculations consist of the number of hours worked by

38.    Given that "[t]he fees plaintiff's counsel requests are less than the total market value of services they rendered," the Court finds that the agreed-upon fee and cost amounts are reasonable. *Saunders*, 2002 U.S. Dist. LEXIS 12718, at *46.

39.    The Court concludes that the objections to Plaintiffs' attorneys' fees and costs are without merit.

### *The Remaining Objections Lack Merit*

40.    Six objectors contend that BellSouth and the other Defendants did nothing wrong and the case should not have been brought.  However, Defendants are sophisticated parties represented by qualified counsel, and have determined that the settlement is in their interest.

41.    Four objectors contend that the relief provided for in the Settlement Agreement is insufficient.  They provide, however, no specifics to support this contention.

42.    Finally, four individuals have submitted objections that are completely unrelated to this ERISA case and the Settlement.

43.    The Court concludes that these remaining objections lack merit.  The Court is satisfied that the Settlement has been negotiated at arm's-length with the

---

each attorney or staff person, multiplied by that person's hourly billing rate.  No multiplier has been applied.

assistance of an experienced mediator, as well as sanctioned by an independent fiduciary on behalf of the Plans.

**Factor Six - *the Stage of Proceedings at the Time of Settlement.***

44.    The parties have litigated for more than four years and are well aware of the strength and weaknesses of their positions.

45.    This litigation began September of 2002, with the filing of numerous complaints, followed by appointment of Lead Counsel and filing of the Consolidated Complaint on April 21, 2003.

46.    The comprehensive informal and formal discovery conducted, extensive motion practice, class certification briefing, and the exhaustive negotiation process have enabled the parties to develop the issues in this case to an appropriate point for settlement.

47.    Based on the evidence, Plaintiffs are fully cognizant of the strength and weaknesses of their claims, and the risks that they face, and believe that the Settlement is in the best interests of the Plans and their participants.

48.    Even after the parties commenced settlement discussions, the Settlement was not achieved quickly or easily, but rather required over six months of hard-fought negotiations, both directly among the parties and with the assistance of Judge Politan.

49.    The Court finds that the advanced stage of these proceedings weighs in favor of approving the Settlement.

50.    Taking all relevant factors into account, the Court concludes that the Settlement is extremely fair, adequate, and reasonable, and should be approved.

**DATED** this ⁵ day of ~~November~~ December, 2006.

HONORABLE J. OWEN FORRESTER
UNITED STATES DISTRICT JUDGE

- 25 -

## CERTIFICATE OF SERVICE AND TYPE

I, Michael I. Fistel, Jr., hereby certify that the Findings of Fact and Conclusions of Law Regarding Settlement, Order and Final Judgment was prepared with one of the font and point selections approved in LR 5.1C and was electronically filed on November 14, 2006, with the Clerk of the Court using CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| H. Douglas Hinson | dhinson@alston.com |
| Patrick C. DiCarlo | pdicarlo@alston.com |
| Peter M. Varney | pvarney@alston.com |
| Ashley B. Watson | ashley.watson@bellsouth.com |
| Joseph H. Meltzer | jmeltzer@sbclasslaw.com |
| Edward W. Ciolko | eciolko@sbclasslaw.com |
| Katherine B. Bornstein | kbornstein@sbclasslaw.com |
| Cory Daniel Holzer | cholzer@holzerlaw.com |
| Glen M. Connor | gconnor@whatleydrake.com |
| Joe R. Whatley | jwhatley@whatleydrake.com |
| David Walbert | dwalbert@pcwlawfirm.com |

I hereby certify that on the 14th day of November, 2006, the Findings of Fact and Conclusions of Law Regarding Settlement, Order and Final Judgment were served on the persons identified below by U.S. Mail, postage pre-paid.

| | |
|---|---|
| S. S. Ajanogha<br>413 Edmonson Cir.<br>Nashville, TN 37211-7221 | William J. Andrle, Jr<br>P.O. Box 28133<br>Atlanta, GA 30358-0133 |
| Raymond M. Baechle, Jr<br>6420 W. Falcons Lea Dr.<br>Davie, FL 33331 | Thomas M. Barnes<br>4015 Old Charlotte Pike West<br>Franklin, TN 37064 |
| Lewis Bostic<br>187 Whispering Pine Rd.<br>Gaffney, SC 29341 | Phillip Mark Brauckmann<br>560 Scarlet Oak Dr.<br>Athens, GA 30605 |
| David A. Brown<br>8654 Chumuckla Hwy.<br>Milton, FL 32571 | David J. Carey<br>496 Turner Hill Rd.<br>Carlton, GA 30627 |

| | |
|---|---|
| Lois B. Carroll<br>835 Eastland Dr.<br>Lincoln, AL 35096 | T. C. Carroll<br>835 Eastland Dr.<br>Lincoln, AL 35096 |
| James R. Caudle<br>3830-L Country Club Rd.<br>Winston-Salem, NC 27104 | Gwendolyn T. Chavis<br>220 Knight Farm Road<br>China Grove, NC 28023 |
| Douglas A. Cole<br>7504 Blue Point Cove<br>McCalla, AL 35111 | Dale O. Cummings<br>1182 Harmon Springs Rd.<br>Dickson, TN 37055 |
| Troy Dunham<br>2675 Titon Way<br>Lawrenceville, GA 30044 | Daryl T. Evans<br>80 Carl Cedar Hill Rd.<br>Winder, GA 30680 |
| Steven P. Garner<br>1125 W. 7th St.<br>Riviera Beach, FL 33404 | Peter R. Green<br>778 Flat Rock Road<br>Stockbridge, GA 30281-2833 |
| John Hand<br>4453 Autumn Glo Ct.<br>Douglasville, GA 30135 | Charles Hardison<br>P.O. Box 682492<br>Franklin, TN 37068-2492 |
| Jill M Hugentugler<br>P.O. Box 4040<br>Ft. Lauderdale, FL 33338-4040 | Virginia Q. Kaderabek<br>5649 Oakes Dr.<br>Brentwood, TN 37027 |
| John Karry<br>3869 Allenhurst Dr.<br>Norcross, GA 30092 | Monta A. King<br>201 Norwick Forest Dr.<br>Alabaster, AL 35007 |
| Gregory D. Kirby<br>3166 Henderson Walk<br>Atlanta, GA 30340 | Jonathan W. Marshall<br>1863 Tranquil Field Dr.<br>Acworth, GA 30102 |
| Alan T. Millsaps<br>204 Chattan Trail<br>Peachtree City, GA 30269 | Margaret W. Noble<br>3416 Old Wood Lane<br>Birmingham, AL 35243 |
| William E. Noble<br>3416 Old Wood Lane<br>Birmingham, AL 35243 | Susan O'Bryan<br>9401 Obryan Lane<br>Owensboro, KY 42301 |
| Laurie W. Scholl<br>6464 Odin St.<br>Los Angeles, CA 90068 | Eric B. Seidel<br>970 Martin Field Drive<br>Lawrenceville, GA 30045 |
| Gail M. Sheffield<br>4210 Randleman Rd. | Mario L. Soto<br>1742 Bruckner Ct. |

| | |
|---|---|
| Greensboro, NC 27406 | Snellville, GA 30078-2784 |
| David S. Souchay<br>P.O. Box 55-7903<br>Miami, FL 33255 | Gregory Mark Spitzer<br>219 Young Rd.<br>Remlap, AL 35133 |
| Laverne O. Stevens<br>205 Circle Dr. NE<br>Pell City, AL 35128 | Theofas G. Stringer<br>4847 Hutson Ave.<br>Birmingham, AL 35207 |
| Reezin N. Swilley<br>1605 Rainier Falls Dr.<br>Atlanta, GA 30329 | Ella Q Thomas<br>175 Weatherly Way<br>Pelham, AL 35124 |
| Gilbert Thomas<br>5682 Mountain Crescent<br>Stone Mountain, GA 30087 | Gary W. Weaver<br>154 CR 143<br>Oxford, MS 38655 |
| C. D. Whatley<br>302 White Moss Place<br>Franklin, TN 37064 | Harold J. Wilson, Jr<br>100 Richmar Dr.<br>Birmingham, AL 35213 |
| David G. Woodruff<br>414 College Avenue<br>Daphne, AL 36526 | Randy S. Young<br>1330 Providence Drive<br>Lawrenceville, GA 30044 |
| Huishan Zhou<br>5112 Rockborough Trail<br>Norcross, GA 30071 | |

Dated: November 14, 2006.

s/  Michael I. Fistel, Jr.
Corey Daniel Holzer
(cholzer@holzerlaw.com)
Michael I. Fistel, Jr.
(mfistel@holzerlaw.com)
HOLZER & HOLZER, LLC
1117 Perimeter Center West, Suite E-107
Atlanta, GA  30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

Liaison Counsel for Plaintiffs